AT

## DAVENPORT, OCTOBER TERM, A. D. 1883.

IN THE THIRTY-SEVENTH YEAR OF THE STATE.

PRESENT:

HON. JAMES G. DAY, CHIEF JUSTICE.
" JAMES H. ROTHROCK,
" JOSEPH M. BECK, ⎫
" AUSTIN ADAMS, ⎬ JUDGES.
" WILLIAM H. SEEVERS, ⎭

## DANIELS ET AL. v. THE KEOKUK WATER WORKS.

1. **Nuisance:** ABATEMENT BY INJUNCTION IN EQUITY: RULE STATED AND APPLIED. It is the rule in equity that where the public benefit arising from the maintenance of an alleged nuisance greatly outweighs private and individual inconvenience resulting therefrom, and the damages sustained by private persons can be admeasured and recovered in an action at law, equity will not interfere by injunction to abate the alleged nuisance. It was accordingly *held*, where a city was dependent upon the defendant's works for a supply of water to extinguish fires, and for other public and domestic uses, and smoke and gases escaping from

defendant's smoke-stack—a necessary part of its works—were accustomed to be carried by the wind over, upon and into the grounds and houses of plaintiffs, whereby they suffered "damage, detriment, inconvenience and annoyance," but no injury to health, destruction of property, or other irreparable injury, that equity would not interfere to abate the works complained of, and that the decree of the circuit court, restraining the defendant from "using its smoke-stack without using a proper smoke-consumer to prevent smoke, soot, etc., from escaping therefrom," was as favorable a judgment as the plaintiffs were entitled to.

*Appeal from Lee Circuit Court.*

TUESDAY, OCTOBER 2.

THE petition states that plaintiffs are residents of the City of Keokuk, and are owners of dwelling houses therein, which are situated on a bluff. That defendant has erected an engine and pumping house at the foot of the bluff near said dwelling houses, and have placed therein boilers and engines, in operating which soft coal is burned, which emits dense masses of black smoke, gases and soot. That the top of defendant's smoke-stack is about opposite the base of plaintiff's houses, and whenever the wind blows in certain directions the entire volume of smoke, gas and soot is turned in the direction of said premises, enveloping and penetrating said houses, and soot in large quantities is deposited on said premises, to the great damage, detriment, inconvenience and annoyance of the plaintiffs, whereby they have been deprived of the comfortable enjoyment of their property. The relief asked is that defendants be perpetually enjoined from so using their works as to cause smoke, gas and soot to fall on and envelope the premises as above stated.

The defendant admitted the erection of the works, but denied that the same were a nuisance, and stated that it was duly authorized to construct its works by an ordinance of the city, which was enacted in pursuance of a statute conferring the requisite power, and that said works have been worked without complaint for three years. That defendant has used all the latest appliances for consuming smoke, and has endeav-

ored to so use the works as to prove of benefit to the public. That defendant has invested in said works a sum in excess of one hundred thousand dollars, and that the only reliable means of extinguishing fires in the city is the use of the water furnished by defendant.

The court entered a decree perpetually restraining the defendant from "using its smoke-stack without using a proper smoke consumer to prevent smoke, soot, etc. from escaping therefrom," and adjudged that each pay one half of the costs. The plaintiffs appeal.

*Anderson Bros. & Davis*, for appellants.

*Hagerman, McCrary & Hagerman*, for appellee.

SEEVERS, J.—The defendant has not appealed, and does not complain of the decree. Therefore we are relieved of the necessity of determining whether the court should have required the defendant to use a smoke consumer. The plaintiffs insist that they are entitled to an absolute and unconditional decree enjoining the defendant from using its smoke-stack, and thereby causing the nuisance of which complaint is made.

It will be observed that it is not alleged in the petition that the health of the plaintiffs or their families is affected by the alleged nuisance, or that their property has been, or probably will be, destroyed, but only that they have suffered great "damage, detriment, inconvenience and annoyance."

When the wind is in a southerly direction, smoke and soot from the smoke-stack are blown and deposited on plaintiffs' premises. At times the smoke is dense, and soot and smoke penetrates plaintiffs' houses to such an extent as to require the windows on the southerly side to be closed. Soot falls on clothes hung out to dry, and on the grass, flowers, carpets, beds, and on the persons of plaintiffs and their families.

The defendant's works are situate at the base of a bluff, on top of which are the premises of plaintiffs. The top of the

smoke-stack is about twenty feet below the basement of the houses, and ·from four to five hundred feet distant. We are impressed by the evidence that the plaintiffs, because of the ·escape of smoke and soot from defendant's smoke-stack, are deprived of the comfortable enjoyment of their property, and the statute defines this to constitute a nuisance, for which the party injured may bring an action at law, in which action the nuisance may be enjoined or abated and damages recovered. Code, § 3331.

It is insisted by the appellee that under this statute the appellants have a full, complete and adequate remedy at law, and that equity has no jurisdiction to enjoin a nuisance which only has the effect to deprive a person of the comfortable enjoyment of property. It is said that it has been so held in Wisconsin, under a similar statute. *Remington et al. v. Foster*, 42 Wis., 608. We do not feel called on to determine this question.

The defendant was authorized by an ordinance of the city to construct the water works. The ordinance was passed in pursuance of Code, section 472, which expressly confers on the city the requisite power. The ordinance requires a number of hydrants to be constructed, and the defendant is compelled to constantly supply a large quantity of water for extinguishing fires, and at the expiration of ten years the city has the option of purchasing the works at an appraised valuation. The defendant has expended about one hundred thousand dollars in the construction of the works.

But the only complaint made is in regard to the smoke-stack, and ·its possible faulty construction. What it cost does not appear, but undoubtedly it was only in a small sum, compared with the whole cost of the works.

The appellants claim that the smoke-stack can be built one hundred feet higher at a comparatively small expense, and that, when this is done, the smoke and soot will pass over and beyond their premises. But this is mere conjecture. The smoke-stack cannot be built higher than it is with safety, un-

less it is enlarged at the base, and the work of construction proceed therefrom.

We are not satisfied that, if the smoke-stack should be constructed one hundred feet higher, no soot would be deposited on plaintiff's premises, but conceding such would be the case, we are not satisfied there. are not others that would suffer therefrom in as great a degree as the plaintiffs do. While the plaintiffs, possibly, might be relieved of smoke and soot, if the height of the smoke-stack were increased, it by no means follows that the defendant would be relieved of the charge of creating a nuisance.

The cases, both in this country and England, are numerous, where courts of equity have restrained nuisances by injunction, and have refused to do so. No practical benefit would result from a citation of cases. It is deemed sufficient to say that this remedy is more freely administered now than formerly. The rule is well known and understood. The real difficulty consists in the application of the rule to a given state of facts. Each case must be determined by its own special circumstances. Some courts more than others have hesitated or refused to grant an injunction until the existence of the nuisance has been established at law. If the matter or thing complained of is in and of itself a nuisance, equity will more readily interfere; or, if the injury is irreparable and cannot be compensated in damages, as when the nuisance is injurious to health, or has the effect to destroy property, the remedy by injunction is more fully administered. See *Pensylvania Lead Company's Appeal*, 96 Pa. St., 116, where poisonous matter was deposited on the plaintiff's premises, whereby vegetation was destroyed. So in *Campbell v. Seaman*, 63 N. Y., 568, where, in the manufacture of brick, a large quantity of "sulphurous acid gas" was produced, which destroyed the plaintiff's trees and vines. This, however, as we understand, was an action at law, and the existence of the nuisance had been established therein before the injunction was issued.

In *Richards' Appeal*, 57 Pa. St., 105, a case in some re-spects much like the one at bar, an injunction was refused, on the ground that the manufacture of iron was lawful, and its production essential. The court said: "Especially should the injunction be refused, if it be very certain that a greater injury would ensue by enjoining, than would by a refusal to enjoin.  *    *    *    *    *.    Hence the chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing, and leaving the party to his redress at the hands of the court and jury." It is said, this case has been overruled by the Pensylvania Lead Co. case above cited; but we do not understand this to be so. See also *Rhodes v. Dunbar*, 57 Pa. St., 274; *Goodall v. Crofton*, 33 Ohio St., 271; *Gilbert v. Showerman*, 23 Mich., 448; *Louisville Coffin Co. v. Warren*, 78 K'y (Rodman), 400; *Green v. Lake*, 54 Miss., 540; *Simpson v. Justice*, 8 Iredell Eq., 115; *Hyatt v. Myers*, 73 N. C., 232.

In the foregoing cases, the nuisance was created by manu-facturing companies, organized wholly for pecuniary pro-fit, and the public benefit was purely incidental, and such as arises from the establishment of all enterprises of that char-acter.    While there is no doubt the defendant was organized with a view of proving a pecuniary benefit to the stockholders, yet this was not the only purpose of its organization.    The benefit to the public, that is, to the citizens of Keokuk, is immediate and direct.

If the defendant were enjoined even for a time, the result might be disastrous; for the water supplied by it is the only efficient means of extinguishing conflagrations at the command of the city or its citizens.    Besides this, a daily and hourly supply of water used for many purposes would be cut off.

We think it may be safely assumed that the rule in equity is, that where the damages sustained can be admeasured and compensated, equity will not interfere where the public bene-fit greatly outweighs private and individual inconvenience. *Coe v. Winnepissiogee Manufacturing Co.*, 37 N. H., 254; *Porter v. Witham*, 17 Me., 292.

The right of every person to pure air must be conceded,. but where persons choose to reside in cities and towns, which have or should have efficient means of extinguishing conflagrations, and an abundant supply of water for many other purposes, they must be regarded as willing to surrender a portion of their rights for the attainment of so desirable an end. The works of the defendant are properly located. In no respect is the construction faulty. The injury caused to the plaintiffs is not irreparable. Their inconvenience and annoyance must yield to the public good in so far as the interposition of equity is concerned. There is no ground for equitable interference because of the multiplicity of suits if plaintiffs are driven to an action at law, because the remedy in this respect is full and complete.

Complaint is made of that portion of the decree taxing one-half of the costs to the plaintiffs. The decree in this respect, and all others, is fully as favorable to the plaintiffs as they are entitled to.

AFFIRMED.