## The Heppenstall Company *v.* The Berkshire Chemical Company.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued December 9, 1943—decided January 13, 1944.

*Lorin W. Willis,* for the appellant (plaintiff).

*J. Kenneth Bradley,* with whom was *John S. Barton,* for the appellee (defendant).

Dickenson, J. The plaintiff conducts a forge and manufacturing plant. It brought this action against

the defendant, which conducts a fertilizer manufacturing business requiring the processing of castor beans, claiming that the dust created by the processing impaired the health of the plaintiff's employees and so affected its business production. It sought an injunction restraining the defendant and "an order under the provisions of the statute for the discontinuance or abatement of such nuisance or for regulating the manner of conducting the defendant's business as the court may deem necessary." Judgment was rendered for the defendant and the plaintiff appealed, assigning as error the conclusions of the court on the facts.

The finding is not attacked and the facts necessary for a determination of the issues are as follows: The parties operate factories opposite each other on Howard Avenue, Bridgeport, in a heavy industrial zone. The gross sales of each run into millions of dollars yearly. The plaintiff makes heavy forgings for war purposes. The defendant manufactures fertilizer and as an incident produces castor oil, a war necessity, under army supervision. The oil is extracted by crushing the bean. There remains a pomace which has no essential war purpose but is high in nitrogen content and a valuable ingredient in fertilizers. Prior to 1935 this pomace was ground into a fine powder, and dust from it drifted on to the plaintiff's property causing certain of its employees symptoms comparable to those of asthma. Attacks of this kind interfere with the work of these employees and may seriously affect the individual and in that way affect the plaintiff's production.

The plaintiff brought this action in 1935, and a temporary injunction was issued by the Superior Court restraining the defendant from grinding the pomace upon the premises and from loading or shipping it from its factory except by boat or rail at night.

This order was complied with but, in spite of this and of serious and expensive efforts to prevent the emanation of dust, on certain days the plaintiff's employees claim to have suffered various degrees of discomfort and interference with their work from it. The only further means to prevent the dust is to stop the production of castor oil on the defendant's premises.

The plaintiff's employees who complain were affected in varying degrees, requiring a cessation of work for a short time, a matter of hours or a day or more. The attacks resulted from the inhalation of the castor bean dust, to which some persons are inherently allergic. Others, not allergic, may become so by exposure over a period of time. The number of plaintiff's employees varied from one hundred and twenty-five in 1935 to four hundred and seventy-four in 1942. From March, 1935, when the grinding was discontinued, to June, 1942, the time of trial, the total number of employees affected sufficiently to quit work was twenty-eight. The total number of occasions when it was necessary for employees to quit work and go home was twenty-seven, of which one man accounted for sixteen. During this period others have been affected to a slight or insignificant degree. The plaintiff's production has been discommoded by the inability of those affected to work, but no effort was made to translate into dollars any financial loss it may have experienced. Of the defendant's own employees, one hundred and twenty-five in number at the time of trial, only two were affected in that period. It would require six months to a year to remove the defendant's plant to another location, if one could be found, and entail considerable expense. Several of the plaintiff's employees, most seriously affected, have brought actions for money damages against the defendant which are now pending.

The right to the remedy which the plaintiff sought was based upon interference with production. It claims that, such interference having been found and a nuisance established, judgment for it must follow. But the plaintiff seeks an injunction and "injunctions fall within the field of equitable remedies and not equitable rights." *Loew's Enterprises, Inc.* v. *International Alliance of Theatrical Stage Employees,* 127 Conn. 415, 418, 17 Atl. (2d) 525. "A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress." *Roy* v. *Chevrolet Motor Car Co.,* 262 Mich. 663, 668, 247 N. W. 774. The question before the trial court was whether under all the circumstances there was likely to be an unreasonable invasion of the plaintiff's rights. "No hard and fast rule controls the subject." "It has been said that a 'fair test as to whether a business lawful in itself, . . . constitutes a nuisance, is the reasonableness . . . in the particular locality . . . under the circumstances of the case'." *Ebur* v. *Alloy Metal Wire Co.,* 304 Pa. 177, 183, 182, 155 Atl. 280. *Hoadley* v. *Seward & Son Co.,* 71 Conn. 640, 646, 42 Atl. 997. "Each case must be determined by its own special circumstances." *Daniels* v. *Keokuk Water Works,* 61 Iowa 549, 553, 16 N. W. 705. Whether the matter is considered in the light of general equitable principles or under the provisions of General Statutes, § 5908, referred to by the plaintiff, the result is the same. This statute provides that "If any manufacturer shall so carry on his business . . . as to constitute a nuisance to the public or to individuals, any persons aggrieved thereby may unite in a complaint to the superior court . . . for the discontinuance or abatement of such nuisance. . . . If . . . the court shall be of opinion that the plaintiffs are entitled to a decree, it may make such order . . . as it shall find

necessary. . . ." The issuance of an injunction rests in the sound discretion of the trial court. *Farrington* v. *Klauber,* 130 Conn. 170, 173, 32 Atl. (2d) 644.

The trial court based its judgment upon two major conclusions: (1) There was no substantial violation of the plaintiff's rights. (2) The use of the defendant's plant was not unreasonable, especially in view of the war effort. The first conclusion was based in part upon the assumption that the castor bean dust does not affect normal persons but only those allergic to it. There is authority for the rule that persons of ordinary health and sensitiveness rather than those affected with disease or abnormal physical condition are to be considered in relation to the injury caused by nuisance. *Wade* v. *Miller,* 188 Mass. 6, 7, 73 N. E. 849; *Tortorella* v. *H. Traiser & Co., Inc.,* 284 Mass. 497, 501, 188 N. E. 254. But, in view of the finding that persons not allergic to the castor bean dust may become so by long exposure, the rule is of doubtful application in the instant case. The ultimate question, however, is, will there be a substantial interference with the conduct of the plaintiff's business? The danger of this must be measured largely by past events. The trial court has found that the total number of the plaintiff's employees affected sufficiently to quit work or seek medical treatment during a period of something over seven years is twenty-eight out of a total number of employees varying from one hundred and twenty-five in 1935 to four hundred and seventy-four in 1942. In these circumstances we cannot find error in the court's conclusion that the threat of injury was not a substantial one. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 173, 180 Atl. 303.

Passing to the court's second conclusion, that the use of the defendant's plant was not unreasonable, espe-

cially in view of the war effort, it appears that it was in a heavy industrial zone; *Nailor* v. *Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 Atl. 548; that both castor oil and nitrogen are highly essential in modern war; that the defendant's plant is one of three such plants in the United States and is under army supervision as to the production of the oil; that the defendant has exhausted every means to lessen the emanation of the dust from its plant; that it has removed its machinery for grinding the castor bean; that the only further means to prevent the dust is to stop the processing of the bean; and that it would require six months to a year to remove the plant to another location, if this could be found, and would entail considerable expense. Both parties were producing war material. A denial of the injunction would inconvenience the plaintiff slightly. To grant it would put the defendant out of business so far as the processing is concerned for a long and critical period of time. *New Haven Water Co.* v. *Wallingford,* 72 Conn. 293, 305, 44 Atl. 235. There was no further regulatory order the court could make under General Statutes, § 5908. See *Godard* v. *Babson-Dow Mfg. Co.,* 313 Mass. 280, 286, 47 N. E. (2d) 303. The matter was one of public interest. *Harrisonville* v. *Dickey Clay Co.,* 289 U. S. 334, 338, 53 Sup. Ct. 602. "Courts will act with extreme caution where the granting of injunctive relief will result in embarrassment to the operations of government." *Coombs* v. *Larson,* 112 Conn. 236, 247, 152 Atl. 297. The court's conclusion that the use of the defendant's plant in the circumstances was not unreasonable may not be disturbed.

The plaintiff claims a right to a continuance of the restrictions upon the defendant fixed by the temporary injunction. The conclusion of the trial court that sufficient facts were not proven to establish the right

is supported by the finding. The defendant has abandoned grinding the pomace and removed the machinery used for that purpose.

A further claim is made that in any event the plaintiff is entitled to judgment for injunctive relief to take effect after the war. The trial court's additional conclusion that there is no threat of substantial interference with the plaintiff's production, which we have upheld, disposes of this claim.

There is no error.

In this opinion the other judges concurred.